UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**AUREA DIANA (o/b/o D.G.),**

    **Plaintiff,**

v.                                        **CASE NO. 8:07-CV-481-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

    **Defendant.**
_____/

**FINAL ORDER**

Plaintiff, on behalf of her minor daughter, D.G. ("Claimant"), brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying a claim for Supplemental Security Income ("SSI") under the Act.[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, reverses and remands the ALJ's decision.

In an action for judicial review, the court must affirm the decision of the Commissioner only if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 15).

F.2d 1233, 1239 (11th Cir. 1983). If substantial evidence does not support the Commissioner's findings, this court may reverse the ALJ's opinion and remand for further consideration consistent with the evidence. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979) (citations omitted).[2]

Additionally, if the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standards. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 589 (11th Cir. 1987).

The Social Security Administration has established a three-step evaluation process to determine whether a child under the age of 18 is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is to determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, the second step is to determine whether the child has a medically determinable "severe" impairment or combination of impairments that is "severe". 20 C.F.R. § 416.924(a),(c). A child under the age of 18 is considered disabled if she has a medically determinable physical or mental impairment (or combination of impairments) that causes marked and severe functional limitations and that can be expected to cause death, or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. Third, if it is determined that the child has a severe impairment, the examiner must determine whether the child's impairment or combination of impairments medically or functionally equals a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

416.924(a), 416.911(b)(1), 416.902.   In evaluating this step, the examiner must consider the combined effect of all medically determinable impairments, even those that are not severe.  20 C.F.R. §§ 416.923, 416.924(b)(4), and 416.926(a) and (c).

To determine whether an impairment or combination of impairments functionally equals a listing, the examiner evaluates the child's functioning in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well being.  20 C.F.R. § 416.926a(b)(1).  These six domains must be evaluated by comparing the child to other children of the same age who do not have impairments. If the child has extreme limitations in one of these domains, or marked limitations in two of them, a finding of functional equivalence will be made.  20 C.F.R. § 416.926a(a),(d).

**I.**

Plaintiff filed her application for SSI benefits on behalf of Claimant on January 27, 2003, alleging that Claimant has suffered disabilities since her birth on December 20, 1991. (T 116) Plaintiff alleges that Claimant is disabled due to asthma, borderline intellectual functioning, and mental illness.   Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision dated April 26, 2006. (T 51-61) Claimant was 14 years old at the time of the ALJ's decision.

On March 2, 2007, the Appeals Council denied Plaintiff's request for review. (T 2-5) Plaintiff then filed this action seeking judicial review of the Commissioner's final decision (Dkt. 1). Plaintiff appeared unrepresented at the November 16, 2005 administrative hearing before the ALJ (T 302)  but has retained counsel for the purposes of this case.

The ALJ found that Claimant's asthma, reading and mathematics delays, developmental language disorder, and adjustment disorder were severe impairments. (T 54) However, the ALJ concluded that the limitations resulting from Claimant's impairments do not meet, medically equal, or functionally equal an impairment listed in the Listing of Impairments in 20 C.F.R. Part 404, subpart P, Appendix 1. (T 55) The ALJ determined that the "statements concerning the intensity, duration and limiting effects of the claimant's symptoms are not entirely credible." (T 56)

In addition, the ALJ found that Claimant does not have an impairment or combination of impairments that results in either marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. (T 61) Instead, the ALJ found that Claimant has a "less than marked limitation in [the domain of] health and physical well-being" due to mild asthma. (Id.)

In September 2006, approximately ten months after the administrative hearing, Claimant sought mental health treatment at the Peace River Center, a community mental health organization. (T 37)  On September 25, 2006, mental health professionals at the Peace River Center diagnosed Plaintiff with schizoaffective and major depressive disorder and assigned Claimant a Global Assessment of Functioning ("GAF") score of 40.[3] (T 14)  Plaintiff's attorney submitted Claimant's records from the Peace River Center to the Appeals Council. (T 9)  The Appeals Council determined that the records do not impact the ALJ's decision because they contain "new information [] about a later time." (T 3) The Appeals Council declined to review the ALJ's decision, making it the

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 30 (4th ed. 2000).  A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 32 (bold removed).

Commissioner's final decision. (T 2)  Plaintiff filed a timely petition for judicial review and has exhausted all administrative remedies.  The Commissioner's decision is ripe for review under the Act.

Most of the medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

**A.**   Plaintiff contends that the ALJ failed to fully develop the record regarding Claimant's limitations in the domain of interacting and relating to others (Dkt. 17 at 15-18).  Specifically, Plaintiff argues that the ALJ erred when he did not (1) follow up with Plaintiff regarding her documentation of Claimant's suicide attempt and (2) obtain Claimant's school records to verify the suicide attempt.

A hearing before an ALJ is not an adversary proceeding; thus, the ALJ has a basic obligation to develop fully and fairly the claimant's medical history.  Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007).  This obligation exists if the claimant is represented by counsel or has waived the right to representation.  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citation omitted).

At the hearing, the ALJ explained Plaintiff's right to representation and Plaintiff testified that she would proceed pro se. (T 300-02; Dkt. 17 at 5)  Nevertheless, Plaintiff has retained counsel for the purposes of this case.  Plaintiff argues that her "problems with both the English language and a basic lack of understanding of how to present evidence at a hearing" limited Plaintiff's and Claimant's ability to represent themselves (Dkt. 17 at 17).  Plaintiff does not specifically challenge her waiver of her right to representation at the hearing.  See Cowart, 662 F.2d at 735 (holding the

ALJ to a "special duty" in cases where the claimant appears pro se and has not waived the right to representation). Likewise, Plaintiff does not assert that an interpreter should have been present at the hearing. As detailed below, however, pro se Plaintiff appeared not equal to the task of developing an adequate testimonial record; thus, the ALJ should have explored all relevant facts to develop Claimant's complete record.

Plaintiff and Claimant testified that Claimant attempted suicide when she was in the sixth grade at Sleepy Hill Middle School in Plant City, Florida. Plaintiff testified: "She tried to pull out all my knives from my kitchen and she tried to do that, and I put all my knives away because I don't want her to do that . . ." (T 305-06) The record does not contain school records or other documents verifying Claimant's suicide attempt. Plaintiff testified, however, that the police came to her workplace to inform her of her daughter's suicide attempt. According to Plaintiff,

> I got a paper, I don't know if you need it. You can call them and talk to a psychiatry person that can tell all about her information by the phone. They know everything about her, they got everything. I got a paper in here with a phone number and –

(T 305) There is no indication in the record that the ALJ either received the document Plaintiff offered or contacted the psychiatrist Plaintiff referenced.

Claimant verified her suicide attempt: "It's that these strange voices kept on telling me things that I did not like and I wanted to kill myself because I didn't wanna hear them no more. I kept on hearing, kill yourself, you're no use in this school . . ." (T 309) When describing her state of mind leading to the suicide attempt, Plaintiff stated, "I was pretty scared, but I didn't know what I was doing because these voices were really controlling me." (Id.) She described different voices in her head that correspond to three different moods and explained that she hears the voice corresponding with sadness at least once a week. (Id.) When probed for more details by the ALJ, Claimant stated:

6

"It's, but, it's saying to me that I'm not useful at school, I'm not helpful and you should just kill yourself with some kind of rope around that school and if you can't find a rope, just jump off a cliff." (T 310)

The ALJ asked Claimant at the end of the testimony if there was anything else she would like him to know. Claimant again referenced a visit to a psychiatrist to talk about her suicidal thoughts:

> Well, there's been like, there's been, it's just that I wish I could go back in time and never told me to kill myself with knives, to make policemen come to my mom's workplace, I didn't want that to happen though, so I went to visit the psychiatrist, the therapist, whatever his name is, and I said why did you send my mom police, she didn't do nothing, Not that I think or ask my mom something like that.

(T 313)

Despite this testimony, the ALJ found that "there is no independent evidence to suggest that the claimant has an affective disorder that would lead to suicidal ideation, as alleged." (T 56) The ALJ relied on the evaluation of Gerald Mussenden, Ph.D. ("Dr. Mussenden"), who performed a consultative examination of Claimant on November 17, 2005, the day after the administrative hearing. Dr. Mussenden concluded that Claimant was intentionally malingering. (T 295) He observed that Claimant interacted appropriately during her conversation with him but determined that Claimant "preferred to present a picture of incompetency and inadequacy. This was all intentional and malingered." (T 294) The ALJ also referenced the opinion of consultative psychologist Tracey Henley, Psy.D. ("Dr. Henley"), who examined Claimant in May 2003 – before the alleged suicide attempt – and diagnosed her with borderline intellectual functioning, communication disorder, and adjustment disorder with anxiety and depressed mood. (T 271-73A) IQ tests Dr. Henley administered revealed that Claimant has a verbal IQ of 72, a performance IQ of 89, and a full scale IQ of 78. (T 273)

7

Other than Plaintiff's and Claimant's testimony, the record does not contain evidence of Claimant's suicide attempt. The ALJ obtained Dr. Mussenden's opinion regarding Claimant's alleged mental disorders before he made his decision denying benefits.[4] The ALJ then weighed Plaintiff's and Claimant's testimony against Dr. Mussenden's conclusion that Claimant is intentionally malingering and determined that Claimant does not suffer from an impairment or combination of impairments that meets or medically equals a listed impairment. (T 54-56) Although the Commissioner is charged with resolving conflicts in the evidence, see, e.g., Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986), the court is unable to determine whether there is substantial evidence to support the ALJ's finding the Claimant has no affective disorder that would lead to suicidal ideation. This is because the ALJ did not fully and fairly develop the issue of Plaintiff's alleged mental disorder.

Plaintiff had a document with her at the hearing that she attempted to give the ALJ. It is unclear what information was on the document, but Plaintiff's testimony suggests that it at least referenced a school psychiatrist with knowledge of Claimant's suicide attempt. (T 305) Additionally, Plaintiff testified that police informed her of Claimant's suicide attempt while she was at work: "Last, it's last year she tried to kill [herself] in the Sleepy Hill Middle School and I was working the Wal-Mart and the police officer went down there." (T 306) Although the ALJ noted in his decision that "[a] police report was reportedly filed regarding the incident", the report is not

---

[4] In any case where there is evidence indicating the existence of a mental impairment, the ALJ may determine that the claimant is not disabled only if he has made "every reasonable effort" to obtain the opinion "of a qualified psychiatrist or psychologist." McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988) (citing 42 U.S.C. § 421(h)). A claimant's testimony, plus evaluations from her treating physicians that indicate a mental impairment, may trigger this statutory duty to obtain a consultative psychological or psychiatric examination. Id.

in the record. (T 55)

The ALJ did contact Sleepy Hills Middle School, the school Claimant was attending when she allegedly tried to kill herself, and the school responded that it had forwarded Claimant's records to Marshall Middle School, where Claimant transferred for the seventh grade. (T 120) However, there is no evidence that the ALJ requested records from Marshall Middle School; thus, the record does not include them. Claimant's sixth grade report card and FCAT scores from Sleepy Hills Middle School are in the record, along with her 2005 Individualized Education Plan ("IEP"). (T 121, 123, 131) These records do not mention Claimant's suicide attempt, however.

Information from a psychiatrist familiar with Claimant's situation would have been especially helpful in this case where the testimony is hard to understand due to Plaintiff's and Claimant's limited proficiency in English. In fact, Claimant's testimony is almost incomprehensible in places until she explains that "years old" is the name she has given the "sad" voice in her head:

> I was in with this therapist at the school, I told him about these three moods that all have each names. I only introduced him to one of years old because I told him that my sadness was like always sad and never happy . . .
>
> . . . .
>
> I just try to tell years old to stop telling me these things but they, the last time they, they came into my mind, they showed me a horrible thing that might happen to me and I woke up scared and it went through here to the other side, kept on saying things to me.

(T 309, 311)

The ALJ did not fulfill his obligation to fully develop the record pertaining to Claimant's suicide attempt before concluding that "there is no independent evidence to suggest that the claimant has an affective disorder that would lead to suicidal ideation, as alleged." (T 56) This conclusion informed the ALJ's credibility determination (discussed below) and his holding that Claimant's

9

impairments do not functionally equal a listing. (T 55-56)  Not only did the ALJ fail to obtain (or even request) the police report of the incident, the records from Sleepy Hill Middle School which were transferred to Marshall Middle School were not in the record and may have shed light on Claimant's suicide attempt.  See Welch v. Bowen, 854 F.2d 436, 440 (11th Cir. 1988) (noting the "full and fair record" standard ensures that the ALJ fulfills his "duty . . . to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'") (quoting Cowart, 662 F.2d at 735).

Thus, the court is unable to determine if the ALJ's decision that Claimant does not suffer from either extreme or marked limitations in any of the six domains of functioning is based on substantial evidence.  Particularly, the evidence in the record is not sufficiently developed as to Claimant's mental disorders, if any.  Thus, the case is remanded on this issue for further fact-finding consistent with this order.  On remand, the ALJ shall attempt to obtain documentary evidence of Claimant's past suicide attempts and any other psychiatric records from that period and Claimant's records from Marshall Middle School, consistent with the case law previously cited.  The ALJ's decision on remand should explain what weight, if any, was given to such evidence and the reason for such valuation.

**B.**    Plaintiff's next argument is that the ALJ erred in concluding that Plaintiff's and Claimant's testimony regarding her symptoms was not fully credible.  The ALJ's decision does not include a detailed analysis of the facts of this case as applied to the regulatory framework of the six domains of functioning. (T 56-61)  Only two and one-half pages of the ALJ's 11-page opinion discuss Claimant's case in detail.  Instead, the ALJ, relying on Dr. Mussenden's conclusions, dismisses Claimant's and Plaintiff's testimony as not credible and recites the legal standards

pertaining to each domain. (Id.)

The credibility of witnesses is for the Commissioner to determine, not the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Davis v. Apfel, 93 F.Supp.2d 1313, 1316 (M.D. Fla. 2000).

In this case, however, the ALJ's credibility determination is based at least in part on Dr. Henley's opinion that Claimant's psychiatric history is "unremarkable". (T 55) The ALJ also states: "One should also remain mindful of the evidence from Dr. Mussenden, strongly suggesting the presence of malingering behavior." (T 56)

Dr. Henley performed her evaluation of Claimant before Claimant's alleged suicide attempt and even then concluded that Claimant suffers from Adjustment Disorder with Anxiety and Depressed Mood, among other things. (T 273A) As stated above, Claimant testified in detail as to her suicidal thoughts and the voices she hears in her head. Claimant testified that she hears the voices at least once a week, that they control her, and that the voices tell her to kill herself with "some kind of rope." (T 309-10) On a questionnaire, both Claimant's elementary school teacher and principal observed that Claimant has social anxiety, problems expressing her frustration, and serious difficulty making and keeping friends. (T 151-64)

Interestingly, in finding that Claimant does not suffer from an impairment or combination of impairments that functionally equals the listings, the ALJ credited Claimant's testimony that her grades at Marshall Middle School were "perfect." (T 55) The ALJ credited this testimony although

Claimant's records from Marshall Middle School do not appear in the record. When evaluating the credibility of Claimant's suicide attempts, on the other hand, the ALJ discredited Claimant's and Plaintiff's testimony and instead relied on Dr. Mussenden's opinion. The ALJ does not explain why he credited Claimant's statements as to her "perfect" grades, but discredited her testimony as to her suicide attempt.

The ALJ supports his credibility determination, at least in part, on the fact that Claimant did not seek psychiatric counseling at Marshall Middle School and did not attend special education classes there. However, there is no indication that Marshall Middle School offers these services. In fact, Claimant testified that counselors are available for her to talk with at the school but that a psychiatrist is not. (T 311) Regarding special education classes, Claimant testified: "I should be in ES[E] because I'm a slow learner and I can't write fast as other kids, but at Marshall middle, they don't have that kind of stuff, but I try my best to keep up with others and I think I'll do well." (T 312) As for any medication she was taking due to her mental illness, she states: "There's no medicine for voices around here." (T 311)

The ALJ failed to properly evaluate Claimant's credibility in light of the entire record. The court is unable to determine whether the credibility finding is based on substantial evidence. On remand, the ALJ shall specifically address the evidentiary items noted above, and make specific findings regarding whether they support or undercut Claimant's credibility.

**C.**  Next, Plaintiff argues that the ALJ's findings are not supported by substantial evidence (Dkt. 17 at 11). Specifically, Plaintiff contends that the ALJ's finding that Claimant does not suffer from borderline intellectual functioning is unsubstantiated (Id. at 12) Plaintiff also asserts that the ALJ erred in holding that Plaintiff does not suffer from marked limitations in the domains of

"acquiring and using information" and "interacting and relating to others." (Id. at 14-15)

It is not necessary to address this argument in detail because a remand is required that could change other findings which are challenged by Plaintiff. See generally Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991). The court notes, however, that the ALJ is required to evaluate and to make separate determinations on whether Claimant's impairments meet, medically equal, or functionally equal a Listing. See Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004) (inquiries of whether claimant "meets," "medically equals," or "functionally equals" a Listing are separate and distinct). A recitation of the applicable regulatory law does not meet this requirement. (T 56-61)

**D.** The court will also not address Plaintiff's remaining argument regarding the Appeals Council's consideration of Claimant's records from the Peace River Center (Dkt. 17 at 19-21). See generally Jackson v. Bowen, 801 F.2d at 1294 n.2.

### III.

As discussed above, the Commissioner's decision is remanded for the application of the correct legal standard and additional fact-finding. In reaching this conclusion, however, this court expresses no views as to what the outcome of the proceedings should be on remand. At the reopened hearing, each party shall have the opportunity to submit additional evidence.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v.

Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006).

**DONE** and **ORDERED** in Tampa, Florida on this 25th day of September, 2008.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

14